UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

vs.

SEVERANO CEBALLOS MARTINEZ,

    Defendant-Appellant.

No. 22-2080
(D.C. No. 1:21-cr-00597-JB)
(D.N.M.)

REPLY IN SUPPORT OF
MOTION TO ENFORCE APPELLATE WAIVER IN PLEA AGREEMENT

In his response opposing the motion to enforce his appeal waiver, Martinez does not contest that the first prong of the analysis required by *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam) is satisfied, *i.e.* that his appeal falls within the scope of the appeal waiver. *Hahn,* 359 F.3d at 1325. But he does dispute the other two prongs, contending that he did not knowingly and voluntarily waive his appellate rights and that "enforcing the waiver would result in a miscarriage of justice." *Id.*; *see* Response. Neither of these arguments has merit.

**I.**     **The magistrate judge did not commit plain error in determining that Martinez's guilty plea was knowing and voluntary.**

    **A.**     **Legal background and standard of review.**

This Court has held that a defendant may satisfy the first prong of the *Hahn* analysis not merely by showing that he did not knowingly or

voluntarily agree to the appeal waiver, but also by showing that his guilty plea itself was not knowing and voluntary. *United States v. Rollings*, 751 F.3d 1183, 1189-90 (10th Cir. 2014). "[A] plea is valid if it represents a voluntary and intelligent choice among the alternatives open to the defendant." *United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000). The defendant has the burden of establishing that his plea was not knowing and voluntary. *Rollings*, 751 F.3d at 1187 (citing *Hahn*, 359 F.3d at 1329).

Ordinarily, whether a guilty plea was knowing and voluntary is a question of law that this Court reviews de novo. *Rollings*, 751 F.3d at 1191 (citation omitted). But because Martinez did not object to the validity of his guilty plea in the district court, this Court reviews his present claim for plain error. *Id.* (citation omitted). To establish that plain error exists, Martinez is required to show "(1) an error; (2) that is plain; (3) which affects [his] substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation omitted).

Martinez does not even acknowledge that the plain-error standard applies to this claim, much less try to show that he has satisfied it. But even if he had, he could not succeed.

### B.    The magistrate judge committed no error.

Martinez argues that once the court learned that he had no education and was illiterate, it failed to conduct a sufficient inquiry into whether his

lack of education and literacy affected his understanding of the proceedings and the voluntariness of the guilty plea. Response, at 6-10. But this claim lacks merit.

    The magistrate judge fully complied with Federal Rule of Criminal Procedure 11(b) in evaluating whether Martinez was knowingly and voluntarily pleading guilty. Because Martinez speaks Spanish, an interpreter was employed at the hearing to ensure that he understood the proceedings. Exh. 2[1] at 2. After learning that Martinez had had no education, the magistrate judge listed the rights that he would be giving up by pleading guilty. *Id.* at 7-8. Martinez said he understood that he would be giving up those rights. *Id.* at 8. The magistrate judge also informed Martinez that he would likely be removed from the United States if he pleaded guilty. *Id.* at 8-9. Martinez said he understood that too. *Id.* at 9. Martinez said that the indictment had been read to him in Spanish. *Id.* at 10. The magistrate judge went over the elements of the offense to which he was pleading guilty, and Martinez confirmed that those elements had been read to him in Spanish. *Id.* at 10-11. The magistrate judge went over some of the other terms of the plea agreement, and Martinez confirmed that the agreement had been read to him

---

[1] Citations to "Exh. 2" are to the transcript of the change-of-plea hearing, which was attached as Exhibit 2 to the government's motion to enforce the appeal waiver.

in Spanish and that his lawyer had gone over it with him. *Id.* at 11-13. The magistrate judge explained that it was up to the district court to decide what Martinez's sentence would be, and Martinez confirmed that he had discussed the government's allegations, the information provided in discovery, and possible defenses with his lawyer. *Id.* at 13-16. The magistrate judge also explained the appeal waiver to Martinez, who said he understood it. *Id.* at 16.

Martinez was also able to explain what he had done. Exh. 2 at 18-20. He admitted that he was driving a vehicle that contained drugs, that he knew there were drugs in that vehicle, and that he planned to deliver those drugs to someone else. *Id.* At all times, Martinez's answers to the magistrate judge's questions were responsive, and nothing about them indicated that he might not understand what was happening.

Despite this lengthy and comprehensive colloquy, Martinez nevertheless complains that the magistrate judge did not evaluate whether his lack of education and illiteracy might have an effect on whether his plea was voluntary and knowing. Response, at 6-10. But this is incorrect. First, given Martinez's lack of education, the magistrate judge took steps to ensure that he had received the assistance of counsel to explain things to him. The magistrate judge asked Martinez whether he had the opportunity to go over the plea agreement, the charges, the evidence, potential defenses, and the potential sentence with his attorney. Exh. 2 at 10-15. The magistrate judge

asked Martinez whether he felt that he had had enough time with his attorney and whether his attorney answered all of his questions. *Id.* at 15-16. Second, because Martinez is both illiterate and apparently does not speak English, the district court asked whether the indictment and plea agreement had been read to him in Spanish, and Martinez said that they had. *Id.* at 10-11, 13.

Martinez does not explain why this questioning was unsatisfactory, nor does he identify any questions he thinks the magistrate judge should have asked instead. *Id.* Indeed, he does not even assert that he did not actually understand the charges, the evidence, his potential defenses, the potential penalties, the plea agreement, or the appeal waiver.

Moreover, Martinez has cited no authority requiring the magistrate judge to conduct the additional, unspecified inquiry he now claims was missing. He suggests that the Supreme Court established a "heightened" standard for accepting guilty pleas in *Godinez v. Moran*, 509 U.S. 389 (1993), *see* Response at 6-7, but that case merely states that determining whether a defendant has knowingly and voluntarily waived a constitutional right requires more information than determining whether he is competent to do so. *Id.* at 400-01. The case does not stand for the proposition that a "heightened" standard requires the district court to perform some special inquiry (beyond what Rule 11(b) already requires) to determine whether a

defendant who is uneducated or illiterate is pleading guilty voluntarily and knowingly.

Martinez also relies on several cases from other circuits, but those authorities are inapposite because they involved defendants who had taken medications before their change-of-plea hearings. But that situation is not comparable to Martinez's. Medications or drugs may physically interfere with the ability of a defendant to voluntarily and knowingly enter a guilty plea, and may even make a defendant incompetent to enter a plea at all. *See Godinez*, 509 U.S. at 401 n.12 (explaining the difference between an inquiry into a defendant's competency and whether he has voluntarily and knowingly pleaded guilty). And those effects may not be apparent to judges, who typically lack training in pharmacology.

By contrast, there is no reason to assume that an uneducated or even an illiterate defendant is unable to knowingly and voluntarily decide whether or not to plead guilty. A guilty plea is valid "if it represents a voluntary and intelligent choice among the alternatives open to the defendant." *United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000). A person who lacks formal education, or who cannot read, may still understand right from wrong, and prefer less prison time to more prison time. In addition, our legal system ensures that all defendants, including uneducated and illiterate ones, have the assistance of counsel in criminal cases to explain the options available to

them in terms they can understand. As noted above, the magistrate judge here confirmed that Martinez did have such assistance. And finally, Martinez's answers to the magistrate judge's questions at the change-of-plea hearing were coherent and responsive; nothing about them indicated any lack of understanding on Martinez's part.

### C. Martinez has failed to show that any error was plain.

Even if Martinez had established that the magistrate judge erred, he has not shown that any error was plain. "An error is plain if it is 'clear or obvious under current, well-settled law.'" *United States v. Faulkner*, 950 F.3d 670, 678 (10th Cir. 2019) (citation omitted). "For an error to be plain and contrary to well-settled law, either this court or the Supreme Court must have addressed the issue." *Id.* (citation omitted). Martinez has failed to point to any provision of Rule 11, or any case from the Supreme Court or this Court, requiring a trial court to conduct an inquiry beyond that required by Rule 11(b) upon learning that a defendant has little education or is illiterate.

### D. Martinez has not even tried to show that any error affected his substantial rights.

Martinez has not shown that any error affected his substantial rights. To satisfy the third plain-error prong in the context of a challenge to a guilty plea, Martinez "must show a reasonable probability that, but for the error, he would not have entered the plea." *Rollings*, 751 F.3d at 1191 (citation

7

omitted). But Martinez does not even attempt to show that his plea would not have been accepted, or that he would have elected to go to trial, if the magistrate judge had conducted the inquiry that he now says was required.

## II. Martinez's ineffective-assistance claim is premature and lacks merit.

Under the third prong of the *Hahn* analysis, this Court considers whether enforcing an appeal waiver "would result in a miscarriage of justice." *Hahn*, 359 F.3d at 1325. A miscarriage of justice occurs when any of the following four factors are present: "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Id.* at 1327.

Here, Martinez appears to contend that he received ineffective assistance of counsel, or that the waiver is "otherwise unlawful," or both. Response, at 10-15. But this Court has held that ineffective-assistance claims should generally be raised and decided in a collateral proceeding, not on direct appeal, because such claims are most often not sufficiently developed at the time of a defendant's direct appeal.[2] *United States v. Galloway*, 56 F.3d

---

[2] The appeal waiver in Martinez's plea agreement preserves his ability to assert ineffective-assistance claims in a collateral proceeding. I ROA 28, ¶ 20.

1239, 1240 (10th Cir. 1995) (en banc). "This rule applies even where a defendant seeks to invalidate an appellate waiver based on ineffective assistance of counsel." *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005) (citation omitted). It is true that a "narrow exception" to this rule exists when an ineffective-assistance claim is "fully developed in the record." *United States v. Trestyn*, 646 F.3d 732, 741 (10th Cir. 2011) (citation omitted). But this case does not fall within that exception because Martinez did not raise any ineffective-assistance claims in the district court. Accordingly, to the extent that Martinez is seeking to invalidate his appeal waiver based on supposed ineffective assistance, this Court should reject this claim without prejudice to Martinez's right to assert it in a collateral proceeding.

Even if Martinez's claim could be reviewed on direct appeal, it would fail because he has not demonstrated that his attorney's performance in negotiating the waiver was deficient. Nor has he proven that his appeal waiver is otherwise unlawful.

Martinez claims that his attorney was ineffective for negotiating the plea agreement because he supposedly received no benefit from it. First, he acknowledges that the plea agreement required the government to dismiss Count 2 of the indictment, which charged him with possession of 40 grams and more of fentanyl with intent to distribute it, in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(B). Response, at 11; *see* I ROA[3] 16. But he says that this did not benefit him because his possession of that fentanyl was used as relevant conduct at sentencing, and claims that the record reveals that he was not advised of that possibility before pleading guilty. Response, at 11-12. But the record does not reveal whether Martinez's attorney advised him about relevant conduct, because he did not develop a record on this point in the district court. And Martinez did benefit from the dismissal of Count 2. If that count had not been dismissed, the district court could have imposed consecutive sentences on Counts 1 and 2. *See* 18 U.S.C. § 3584(a). Although Martinez may well contend that was unlikely, a defense attorney does not render deficient performance by guarding his client from risks, even small ones, that would have devastating consequences to the client if they occurred.

Second, Martinez argues that he received no benefit from the government's promise to recommend a sentence at the low end of the guideline range. Response, at 12-13. Martinez now believes it was "reasonably probable" that he would have received the same sentence anyway because the government fulfilled its part of the bargain by arguing for a low-end sentence, and because the district court agreed that such a sentence was appropriate. *Id*. But Martinez ignores that the facts of a case may support a

---

[3] Citations to "ROA" are to the record on appeal, preceded by the volume number and followed by the "DNM" page number at the bottom of each page.

number of reasonable sentences. *See, e.g., United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011) (citation omitted) ("In virtually every case, many sentences would be reasonable."). The fact that a low-end guideline sentence was reasonable does not mean that a higher sentence within the guideline range could not also have been imposed. Defense counsel acted reasonably by negotiating an agreement that increased the likelihood that Martinez would receive a sentence at the low end of the range. Martinez's after-the-fact speculation does not render defense counsel's performance deficient.

Martinez also argues that his attorney was deficient in negotiating the appeal waiver because his presentence report (PSR) inaccurately calculated his criminal history points, and that this prejudiced him because he cannot now appeal that supposed error. Response, at 13. He may also be arguing that the appeal waiver is "otherwise unlawful" because it would be a miscarriage of justice not to allow him to challenge this supposed error. *Id.*

But the parties signed the plea agreement (including the appeal waiver), and Martinez pleaded guilty, *before* the PSR was written. *Cf.* I ROA 20-30 (plea agreement, signed on October 20, 2021) and Exh. 2 (plea hearing transcript from November 3, 2021); with II ROA 1-13 (PSR entered on December 22, 2021). Defense counsel cannot be held ineffective for failing to predict that the Probation Office would miscalculate his criminal history points in the future. *See, e.g., Maryland v. Kulbicki*, 577 U.S. 1, 4 (2015) (per

11

curiam) (stating that the reasonableness of counsel's challenged conduct is assessed at the time it occurred).

And the otherwise-unlawful category of miscarriage of justice "looks to whether 'the *waiver* is otherwise unlawful,' not to whether another aspect of the proceeding may have involved legal error." *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007) (internal citation omitted). An attack on the Probation Office's calculation of criminal history points is not an attack on the appeal waiver, and therefore does not demonstrate that the waiver is "otherwise unlawful." *See United States v. Olivas-Lasos*, 594 F. App'x 558, 559-60 (10th Cir. 2015) (holding that the defendant's claim that his criminal history points were incorrectly calculated does not fit within the otherwise-unlawful category of a miscarriage of justice).

Moreover, the Probation Office did not commit any error in the first place. Martinez claims that the Probation Office erroneously assigned three criminal history points to the convictions listed at paragraphs 33 and 34 of the PSR. Response, at 13. This calculation was appropriate because each of those sentences was for over 13 months. *See* U.S.S.G. § 4A1.1(a). But Martinez argues that because the sentences for both offenses were imposed on March 3, 2006, and because he was removed to Mexico on March 14, 2006, only two points should have been assigned to the conviction in paragraph 33, and one point to the conviction in paragraph 34. *Id.* Martinez does not

12

explain why he thinks this is so, but the government assumes he is arguing that because he did not actually serve the full term of imprisonment on each sentence, fewer criminal history points were warranted. If that is his argument, it lacks merit. *See* U.S.S.G. § 4A1.2, Application Note 2 ("[C]riminal history points are based on the sentence pronounced, not the length of time actually served.").

Martinez next argues that defense counsel was ineffective because the plea agreement only guaranteed him a two-level reduction of his offense level for acceptance of responsibility instead of a three-level reduction. Response, at 14-15. Martinez claims that he would have been entitled to a three-level reduction without any agreement at all, and therefore the plea agreement did not benefit him. *Id.* But even if this were true, it does not matter because, as explained above, the plea agreement was still supported by consideration because the government agreed to dismiss Count 2 and to recommend a low-end guideline sentence. Martinez also complains that "nowhere does the government stipulate that [he] should be given full credit for acceptance of responsibility," Response, at 15, but he has apparently overlooked that the government moved that he should be given a full three-level reduction for acceptance of responsibility. I ROA 39-40. And he did in fact receive that

reduction. II ROA 5-6, ¶¶ 27-28; Exh. 3,[4] at 4-5 (district court granting three-level reduction at sentencing hearing).

## Conclusion

For these reasons, the United States respectfully requests that this Court enforce the appeal waiver in Martinez's plea agreement and dismiss this appeal.

    Respectfully submitted,

    ALEXANDER M.M. UBALLEZ
    United States Attorney

    *s\ Emil J. Kiehne*
    EMIL J. KIEHNE
    Assistant U.S. Attorney
    P. O. Box 607
    Albuquerque, NM 87103
    (505) 346-7274
    emil.kiehne@usdoj.gov

---

[4] Citations to "Exh. 3" are to the transcript of the sentencing hearing, which was attached as Exhibit 3 to the government's motion to enforce the appeal waiver.

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION

      I HEREBY CERTIFY that the foregoing motion was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on February 2, 2023. I ALSO CERTIFY that Alejandro B. Fernandez, attorney for Defendant-Appellant Severano Ceballos Martinez, is a registered CM/ECF user, and that service will be accomplished by the appellate CM/ECF system. I ALSO CERTIFY that this document contains 3,103 words and that I relied on my word processor, Microsoft Word 2016, to obtain this count.

      *s\ Emil J. Kiehne*
      EMIL J. KIEHNE
      Assistant U.S. Attorney